IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Darlene Miles, | Civil Action No. 8:07-3164-RBH-BHH |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of Social Security, | **OF MAGISTRATE JUDGE** |
| Defendant. | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Darlene Miles, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for Disability Insurance Benefits ("DIB") under the Social Security Act.

## **RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 58 years old on the date she alleged she became disabled. (R. at 45.) Her past work was as a housekeeper and a data entry clerk. (R. at 64, 67.) According to the plaintiff's written statement, the data entry clerk job involved putting salesmen's orders into the computer, answering telephone calls, microfilming orders, using a printer and carrying paperwork. (R. at 67.) The plaintiff's applications alleged disability since April 22, 2005, due to limitations caused by degenerative disc disease, fibromyalgia, diabetes mellitus, cataracts and paroxysmal atrial fibrillation (an abnormal heart rhythm). (R. at 16, 17, 45.)

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The plaintiff protectively applied for disability insurance benefits under sections 216 and 223 of Title II of the Act, 42 U.S.C. §§ 416(i), 423, on June 16, 2005. (R. at 45-49.) The Commissioner denied the plaintiff's application initially and upon reconsideration. (R. at 32-33, 39-40.)  Pursuant to the plaintiff's request, a hearing *de novo* before an Administrative Law Judge (ALJ) was held on June 27, 2006, at which the plaintiff and her legal counsel appeared.   (R. at 220-45.) The ALJ issued a decision on March 29, 2007, finding that the plaintiff was not disabled.  (R. at 11-20.) The Appeals Council denied the plaintiff's request for review of the hearing decision on August 25, 2007.  (R. at 4-7.) The decision of the ALJ therefore became the final decision of the Commissioner.

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through May 31, 2010.

2. The claimant has not engaged in substantial gainful activity since May 22, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease (DDD), fibromyalgia and diabetes mellitus (20 CFR 404.1520(c)) .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of sedentary work, defined as the ability to life/carry 10 pounds, stand 2 hours in an 8 hour workday, walk 2 hours in an 8 hour workday and sit 6 hours in an 8 hour workday.

6. The claimant is capable of performing past relevant work as a data entry clerk (DOT 203.582-054).  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 22, 2005 through the date of this decision (20 CFR 404.1520(f)).

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner

may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) finding that she could perform her past relevant work; (2) not properly assessing her residual functional capacity; and (3) failing to make a proper credibility determination. The Court will address each alleged error in turn.

**I.      Prior Relevant Work**

The plaintiff first complains that the ALJ erroneously concluded that she could still perform her past relevant work as a data entry clerk. The ALJ found that the plaintiff is, in fact, able to perform her past work as it is generally performed, and as it was actually performed by her. (R. at 19-20.) In so ruling, the ALJ emphasized that "[t]he claimant acknowledged no physical limitations that would preclude returning to this work. In addition, the claimant's residual functional capacity supports a return to this work." (R. at 19.)

The plaintiff first complains that the ALJ misconstrued the plaintiff's testimony insofar as he understood her to have "acknowledged no physical limitations that would preclude returning" to her past relevant work. *Id*. The plaintiff recounts her hearing testimony in refutation of the ALJ's conclusion.

The plaintiff admits that when initially asked if she thought she could return to any of the jobs she had done in the past, she responded: "No. Uh-uh. Not that I done. No." (R. at 233.) The plaintiff further concedes that when specifically asked about the data entry job she replied, "I'm not sure." *Id*. The plaintiff argues, however, that when she was asked about physical problems she might have attempting to perform the data entry job, she replied that the sitting, standing, and walking required would give her difficulty. *Id*. In regards to sitting, she said: "My lower part of my back would start hurting and that [sic]. And I mean, it just start to hurt from down into my legs and that [sic]. I start to hurt down into my legs and my hip area." *Id*.

Later in the hearing, when asked about her ability to sit, the plaintiff indicated she could remain in a seated position about 30 minutes. (R. at 236.) In addition to the problems sitting, the plaintiff also testified as to significant side effects from her medications. (R. at 235) and problems with her hands (R. at 228), all of which are problems that the plaintiff contends could reasonably be found to significantly interfere with her attempt to perform work as a data entry clerk.

The Court agrees with the plaintiff that the ALJ's statement that she had "acknowledged no physical limitations" appears, on its face, inaccurate. As recited above, she did testify to such limitations. The defendant, as far as the Court can tell, has not substantially rejoined this specific point. Initially, however, the Court perceived this fact as insufficient to carry the day for the plaintiff. Namely, it seemed that the ALJ's additional determination that the plaintiff's residual functional capacity ("RFC") supported a conclusion that she could return to her past relevant work rendered any error concerning the plaintiff's testimony as to her physical limitations harmless. In other words, he had advanced an alternative ruling. So long as that alternative ruling was based on substantial evidence, it would be sufficient to justify a conclusion that she could return to her past relevant work, even if she had testified to physical limitations not fully credited.

After some consideration, however, the Court is alternatively persuaded that the two ideas are, in fact, not separable as bases for the ALJ's decision. To misperceive or overlook, and therefore not fully account for, the subjective allegations of limitations testified to by the plaintiff is to necessarily render the RFC analysis incomplete, at best. As the ALJ expressly concedes in his decision, the plaintiff's subjective complaints of pain, limitation, and symptomology are all relevant to the RFC determination. (R. at 17); 20 C.F.R. § 404.1529.

While the Court agrees that the issue, therefore, is material and must be resolved, the undersigned believes that there was no error in the ALJ's consideration. Notwithstanding his above-recited conclusion that the plaintiff failed to acknowledge any limitations, the ALJ expressly recognized the plaintiff's allegation that she is only "able to stand for 30 minutes at a time and sit for 30 minutes at a time due to pain" and that she experiences "pain, dizziness/light-headedness, feet swelling and fatigue." (R. at 18.) Moreover, he considered those allegations in accord with the two-step process for evaluating subjective complaints of pain and symptomology prescribed in *Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). The plaintiff's cursory allegation that the ALJ's analysis

in this regard was scant, is without merit.  The ALJ specifically identified the required standard and then performed a thorough analysis.  (R. at 17-19.)  The plaintiff makes no specific objection to the analysis other than to contend it is conclusory.  The contention is unfounded.  The ALJ found that the plaintiff's impairments could reasonably be expected to produce some of the alleged symptoms but that her statements about the severity and limiting effects of those impairments were not fully credible. (R. at 19.) The ALJ considered the objective medical evidence as well as evidence of the plaintiff's noncompliance with prescribed treatment. *Id*.  It was the ALJ's conclusion that when the plaintiff was compliant with her treatment she experienced fewer limitations and reduced symptomology, but even when she was noncompliant her impairments did not result in limitations which would prohibit her from performing sedentary work.  *Id*.  As stated, the substance of the ALJ's analysis, in this regard, is not contested by the plaintiff.

In light of the fact that the ALJ truly considered all of the subjective allegations, which the plaintiff contends he did not, the Court interprets the remark by the ALJ that the plaintiff did not acknowledge any limitations preclusive of her past relevant work more narrowly than she would.  Specifically, it is clear that the ALJ meant to say that, after discounting those allegations of limitation and pain, the plaintiff's testimony speaks of no limitation which would preclude her from returning to her past work.  But, regardless of what the ALJ intended, the plaintiff testified to certain limitations she believed she suffered and the ALJ considered those in his decision, expressly. (R. at 18-19.)

The plaintiff further contends that the ALJ wrongly concluded that she could return to her past work because he did not properly treat her past work as a composite job.  The ALJ characterized the plaintiff's past work as a data entry clerk.  (R. at 19.)  The plaintiff contends, however, that she described her past work as a composite of different broad job titles. (R. 67, 227.)     Specifically, the plaintiff described her job as being a composite of data entry, microfilmer (DOT 976.385-010, http://www.occupationalinfo.org/97/976385010.html), and inventory clerk (DOT

7

222.387-026, http://www.occupationalinfo.org/22/222387026.html). As she contends, the plaintiff described these additional aspects of her past work in both her testimony and in forms completed for the Social Security Administration. (R. at 227.)

In making a determination of the plaintiff's past relevant work, it is appropriate to rely on the claimant's testimony as to the demands of her past relevant work. SSR 82-62 provides: "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." SSR 82-62.

The plaintiff argues that where past relevant work is composite in nature, the ALJ may not consider the duties of one job and ignore the duties of the other. In support, the plaintiff has cited numerous decisions where courts have concluded that the ALJ improperly parsed the work requirements of a composite job. *See Vertigan v. Halter*, 260 F.3d 1044, 1051 (9th Cir. 2001); *Bechtold v. Massanari*, 152 F. Supp. 2d 1340, 1344 (M.D. Fla. 2001); *Parsons v. Apfel*, 101 F. Supp.2d 357, 362 (D. Md. 2000).

The defendant has attempted to distinguish these decisions, however, from the case at bar. The defendant contends that in each of the cited cases, the courts determined that the ALJ had improperly concluded that the *ancillary* job duty was the past relevant work over the more central one. In other words, the courts did not admonish the administrative decisions simply because they focused on one set of job responsibilities over another but because the decisions elevated in importance infrequent job duties over frequent ones, in defining past relevant work.

There is some truth to the defendants representation. For example, in *Vertigan v. Halter*, the claimant testified that her main occupation was as a pharmacy clerk and that her cashier duties were a part of that job. The *Vertigan* court held that it was improper for the ALJ to find that the ancillary work of cashier worker was the plaintiff's past work over that of pharmacy clerk. *Vertigan*, 260 F.3d at 1051. Similarly, the court in *Bechtold v. Massanari*, found it was error to conclude that the part of a job the claimant performed only

occasionally was, in truth, her past work. *Bechtold*, 152 F. Supp. 2d at 1344. Lastly, in *Parsons v. Apfel*, the court was troubled by the fact that the claimant did not actually perform the job of consultant that the ALJ found he could perform. *Parsons*, 101 F. Supp. 2d at 362.

In this case, the plaintiff clearly testified that the main duty of her past work was as a data entry clerk and that the inventory work was only performed on an infrequent basis (R. 225). She specifically testified that she performed the inventory work only one Saturday per month. (R. at 227.)

To the Court, the matter is a close call. The ALJ's decision does not unfairly characterize the plaintiff's past work. She was principally a data entry clerk. The ALJ did not elect some ancillary duty over a central one. The Court is somewhat concerned that in focusing on the data entry position, even to the extent it predominated, the ALJ improperly emphasized less exertional responsibilities over greater exertional ones. *See Valencia v. Heckler*, 751 F.2d 1082, 1086-88 (9th Cir. 1985). While the ALJ found that the plaintiff's inventory duties constituted only light work, in fact, the plaintiff indicated that she was required, as part of those duties, to sometimes lift 25 pounds. The Regulations define "light work," in part, as: lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). As the plaintiff contends, therefore, the inventory duties are more rightly characterized as medium work. *See* 20 C.F.R. § 404.1567(c). Whether light or medium, the lifting requirements of the inventory work would necessarily be beyond the residual functional capacity determined by the ALJ.

In *Valencia*, the ALJ's determination was reversed because the ALJ determined that the claimant's past work was "tomato sorter," classified as light work, as opposed to the broader category of "kitchen helper," which was classified as medium work. *Id*. at 1086-87. The Court in *Valencia* found it improper for the ALJ to parse out one job duty, tomato sorting, which required less exertion than what the overall job of kitchen helper demanded,

and then treat it as the plaintiff's past work. *Id*. The Ninth Circuit emphasized that such a decision went beyond the fourth-step inquiry concerning whether or not the claimant could perform past work and erroneously ventured into a step-five inquiry, whether or not, based on skills obtained from past work, other work in the economy could be performed. *Id*.

That is not what has occurred here. The ALJ focused on what is undisputedly the predominating character of the plaintiff's past work – data entry clerk. The fact that such work required less exertion than the infrequently performed inventory work is coincidental. Unlike Valencia, the ALJ did not cull the responsibilities of the prior work simply to find a skill that the plaintiff could perform and which could be characterized as past work. Moreover, the ALJ did not disregard the inventory portion of the plaintiff's past work. He specifically noted it. (R. at 19.)

The Court is unaware of any Fourth Circuit or other jurisdictional decision which, under the circumstances, would require a conclusion by this Court that the ALJ committed legal error. While the plaintiff may not be able to perform her past work precisely as it was performed, when considering the inventory work, she has made no argument that she could not perform the data entry work as it is performed generally. The ALJ focused on the central quality of her past work and found that she could perform it. (R. at 20.)

## II.    Residual Functional Capacity

Lastly, the plaintiff complains that the ALJ ignored significant evidence, miscontrued other evidence, and generally performed a deficient analysis of her residual functional capacity ("RFC"). The "RFC is an assessment of the individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p at *1. "To determine the claimant's RFC, the ALJ must consider the relevant medical evidence and other evidence of the claimant's condition in the record, including testimony from the claimant and family members." *Morgan v. Barnhart*, 142 Fed. Appx. 716 (4th Cir. 2005) (citing 20 C.F.R. § 404.1529(c)(3) (2004)).

Contrary to the plaintiff's suggestion, the sheer fact that a piece of evidence is not discussed in the decision does not make it erroneous. An ALJ is not required to provide a written evaluation of every piece of evidence, but need only "minimally articulate" his reasoning so as to "make a bridge" between the evidence and his conclusions. *Fischer v. Barnhart*, 129 Fed. Appx. 297, 303 (7th Cir. 2005) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir.2004)); *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered") (citations omitted). Moreover, a formalistic factor-by-factor recitation of the evidence is simply not required. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *see also Dryer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that the ALJ is not required to specifically refer to every piece of evidence in the decision).

The ALJ's RFC analysis is not facially problematic. Most importantly, the ALJ relied on the only functional assessments made in the record that the plaintiff could perform the requirements of light work. (R. at 91-98, 130-37.) Those opinions constitute substantial evidence that the plaintiff can perform the demands of her past work. Critically, if a person can perform light work, she can perform sedentary work. *See* 20 C.F.R. § 404.1567(b). The plaintiff does not challenge those State Agency assessments at all.

Instead the plaintiff details various pieces of evidence which she contends the ALJ misconstrued – to wit, stenosis findings, positive straight leg test, fibromyalgia, and DEXAscan results. (R. at 99, 113, 120, 193.) The plaintiff, however, has not explained how such evidence, if fully considered, would have proven additional limitations sufficient to eliminate the possibility that the plaintiff could perform the sedentary work required of her past relevant work. Accordingly, error, if any, in either failing to consider such evidence or in misconstruing it, would be harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error").

The plaintiff does allege, what could potentially amount to material error, insofar as she complains that the ALJ did not explain how the plaintiff could meet the sitting requirements of the data entry job considering the foreseeable limitations on that activity that would be caused by the plaintiff's degenerative disc disease, which the ALJ recognized as severe. As previously discussed, however, the ALJ discounted the plaintiff's subjective allegations of her sitting limitation and recited substantial evidence in support. (See R. at 16-19.) In other words, he did not find that limitation fully credible. Importantly, the ALJ made specific and repeated note that the plaintiff was less than compliant with her treatment and that when she was, she experienced fewer limitations. This was clearly a critical point for the ALJ and the plaintiff has offered nothing to undermine it.

The Court has thoroughly reviewed the evidence and admits that it may be susceptible to multiple interpretations. That fact, however, is of no moment. It is immaterial whether the plaintiff can produce conflicting evidence which might have resulted in a contrary decision. *See Blalock*, 483 F.2d at 775. As recited, the ALJ had substantial evidence to conclude as he did and the Court will not disturb his decision.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>United States Magistrate Judge

November 25, 2008
Greenville, South Carolina